1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   CHARLES DIXON,                    ) Case No. CV 16-5844-JPR
                                       )
12                      Plaintiff,     )
                                       ) **MEMORANDUM DECISION AND ORDER**
13            v.                       ) **REVERSING COMMISSIONER IN PART**
                                       )
14   NANCY A. BERRYHILL, Acting        )
     Commissioner of Social           )
15   Security,[1]                      )
                                       )
16                      Defendant.     )
     ─────────────────────────────── )
17

18   **I.    PROCEEDINGS**

19        Plaintiff seeks review of the Commissioner's final decision

20   denying his applications for Social Security disability insurance

21   benefits ("DIB") and supplemental security income benefits

22   ("SSI").  The parties consented to the jurisdiction of the

23   undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The

24   matter is before the Court on the parties' Joint Stipulation,

25   filed August 14, 2017, which the Court has taken under submission

26   without oral argument.  For the reasons stated below, the

27   ─────────────────

28        [1] Nancy A. Berryhill is substituted in as the correct
     Defendant.

                                    1

1   Commissioner's decision is reversed as to Plaintiff's SSI

2   application and this action is remanded for further proceedings.

3   **II.  BACKGROUND**

4       Plaintiff was born in 1969.  (Administrative Record ("AR")

5   110, 174.)  He has an 11th-grade education (AR 63)[2] and last

6   worked in 2003 as a railroad worker (AR 191).

7       On October 1, 2013, Plaintiff applied for DIB and SSI,

8   alleging that he had been unable to work since November 28, 2007

9   (AR 110, 174-77), because of lower-back pain, gout flare-ups,

10  gunshot wounds, and injury to the fingers on his left hand and to

11  his femur bone (see id.).[3]  After his applications were denied

12  initially and upon reconsideration (see AR 137-38, 141-45), he

13  _____

14       [2] Though Plaintiff testified at his hearing that he
    completed 11th grade and never received a high-school diploma (AR
15  63), the record shows elsewhere that he has a 12th-grade
    education (AR 115, 190).
16
17       [3] An ALJ denied Plaintiff's earlier applications for DIB
    and SSI on December 12, 2011.  (AR 125-33.)  The ALJ here made
18  conflicting findings on whether Plaintiff had demonstrated
    changed circumstances indicating greater disability since that
19  final decision and whether the presumption of continuing
    nondisability therefore applied.  (See AR 43 (presumption
20  applies), 50 (presumption does not apply)); Lester v. Chater, 81
    F.3d 821, 827-28 (9th Cir. 1995) (as amended Apr. 9, 1996)
21  (citing Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988), as
    holding that certain changed circumstances preclude application
22  of res judicata).  Defendant does not contend that the
    presumption applies, so the Court assumes it doesn't.
23
24       Plaintiff's insured status expired on December 31, 2007 (see
    AR 43), and thus the 2011 final finding of "not disabled" (see AR
25  125-33) makes him ineligible to receive DIB because a DIB
    claimant must establish that he became disabled on or before the
26  expiration of his insured status.  20 C.F.R. § 404.131; see also
    Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Chavez, 844
27  F.2d at 693 ("The principles of res judicata apply to
    administrative decisions[.]").  Thus, the Commissioner's denial
28  of Plaintiff's DIB application is affirmed.

                                    2

requested a hearing before an Administrative Law Judge (AR 140).
A hearing was held on November 19, 2014, at which Plaintiff, who
was represented by counsel, testified, as did a vocational
expert. (See AR 56-82.) In a written decision issued on
December 9, 2014, the ALJ found Plaintiff not disabled. (AR 42-
55.) Plaintiff requested review and submitted additional
evidence. (See AR 36-37, 229-30, 441-95.) On June 6, 2016, the
Appeals Council denied review, finding that the additional
evidence did not provide a basis for changing the ALJ's decision.
(AR 1-5.) The council ordered that the new evidence be made part
of the administrative record. (AR 6.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits. The ALJ's findings and
decision should be upheld if they are free of legal error and
supported by substantial evidence based on the record as a whole.
See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra
v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial
evidence means such evidence as a reasonable person might accept
as adequate to support a conclusion. Richardson, 402 U.S. at
401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).
It is more than a scintilla but less than a preponderance.
Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether
substantial evidence supports a finding, the reviewing court
"must review the administrative record as a whole, weighing both
the evidence that supports and the evidence that detracts from
the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715,

720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.  The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments

4

meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed.  § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[4] to perform his past work; if so, he is not disabled and the claim must be denied.  § 416.920(a)(4)(iv).  The claimant has the burden of proving he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v); Drouin, 966 F.2d at 1257.  That determination comprises the fifth and final step in the sequential analysis. § 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 28, 2007, the alleged

---

[4] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  The Commissioner assesses the claimant's RFC between steps three and four.  Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

onset date. (AR 45.) At step two, he concluded that he had severe impairments of "a back disorder and gout." (Id.) At step three, he found that he did not have an impairment or combination of impairments falling under a Listing. (AR 45-46.)

At step four, the ALJ found that Plaintiff had the RFC to perform light work with additional limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk for 6 hours out of an 8 hour day and can sit for 6 hours out of an 8 hour day with normal breaks. He can perform postural activities (bending, stooping, crouching, crawling and kneeling) occasionally. He can handle and finger frequently. He has reduced grip strength.[5] He can push and pull without significant limitations. He has no other limitations.

(AR 46-48.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform any past relevant work. (AR 48-49.) At step five, however, given Plaintiff's "age, education, work experience, and [RFC]," he determined that he could successfully perform work available in the national economy, such as "cashier II" and "sales attendant." (AR 49-50.) Thus, the ALJ found Plaintiff not disabled. (AR 50.)

**V.  DISCUSSION**

Plaintiff argues that the ALJ erred in (1) evaluating the credibility of his subjective symptom statements and (2) considering and evaluating the opinion of Dr. Randall Gilbert.

---

[5] At the hearing, the ALJ clarified that this translated into "no forceful gripping." (AR 78.)

6

(J. Stip. at 4.)  Because the ALJ erred in the first regard, the matter must be remanded for further analysis and findings.

> A.   The ALJ Erred in Assessing the Credibility of
>       Plaintiff's Subjective Symptom Statements

Plaintiff argues that the ALJ "failed to articulate legally sufficient reasons" for finding his subjective symptom statements "not fully credible."  (See J. Stip. at 4-13, 23-26; AR 48.)  He is correct.

> 1.   Applicable law

An ALJ's assessment of the credibility of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986).  "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d at 1035-36; see also SSR 96-7p, 1996 WL 374186 (July 2, 1996).[6]

_____

[6] Social Security Ruling 16-3p, 2016 WL 1119029, effective March 28, 2016, rescinded SSR 96-7p, which provided the framework for assessing the credibility of a claimant's statements.  SSR 16-3p was not in effect at the time of the ALJ's decision in this case, however, and therefore does not apply.  Still, the Ninth Circuit has clarified that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." <u>Lingenfelter</u>, 504 F.3d at 1036. If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the <u>degree</u> of symptom alleged." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. <u>See</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the

individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (alterations in original) (quoting SSR 16-3p).

claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

2. Relevant background

Plaintiff applied for DIB and SSI in 2010, alleging disability beginning September 25, 2006. (AR 125.) Although his medical records from before December 2011 are not in the record, it appears he claimed to suffer from "bilateral knee problems, gout, and chronic foot, knee, and wrist pain 2 to 3 times a month." (AR 129.) He stated that he was hospitalized for about one month in 2007 because of liver and kidney problems caused by medication. (Id.) A March 20, 2010 consultative exam showed "chronic back pain with some tenderness of the lumbar spine with preserved range of movement and no signs of radiculopathy." (AR 128.)

In December 2011, Plaintiff sustained gunshot wounds to his "abdomen, back, face, and left lower extremity." (AR 304.) His "principal diagnoses" were gunshot wounds to his "right cheek," his "right lower quadrant, tangential injury," and his "left thigh with femur fracture." (AR 303.) He had an "intramedullary nailing of the left femur fracture," during which a rod was put in his leg to help his bone heal. (AR 67, 303.) He was

prescribed Vicodin[7] for his pain. (AR 303-04.) At a follow-up appointment two weeks after his surgery, Plaintiff was "still having difficulty ambulating" but was "recoveri[n]g well." (AR 297-98.) He "denie[d] any pain" and "[said] the symptoms [were] mild." (Id.)

Family-care physician Daniel Harvey first treated Plaintiff in early 2012 for lingering pain related to his gunshot wounds. (AR 279-80.) On February 13, 2012, Plaintiff was "able to walk [with a] walker" despite his "slow rehab." (AR 279.) In April 2012, Dr. Harvey diagnosed gout and prescribed colchicine[8] (AR 278) and oxycodone[9] (AR 277). He referred Plaintiff to Dr. Annette Billings, an orthopaedic surgeon. (See AR 246-47.) On April 26, 2012, she evaluated Plaintiff for "right upper extremity edema."[10] (AR 246.) He reported that the edema was "intermittent" but could "sometimes" "be quite severe." (Id.) He stated that it did not cause "a lot of pain" or "really any dysfunction." (Id.) He also complained of a painful mass on his

---

[7] Vicodin is a narcotic pain medication used to relieve moderate to moderately severe pain. See Vicodin, Drugs.com, https://www.drugs.com/vicodin.html (last updated Sept. 29, 2016).

[8] Colchicine prevents or treats gout flare-ups by decreasing swelling and lessening the buildup of uric-acid crystals in the affected joints. See Colchicine, WebMD, https://www.webmd.com/drugs/2/drug-8640/colchicine-oral/details (last visited Jan. 9, 2018). Colchicine is the generic name for Colcrys. Id.

[9] Oxycodone is a narcotic pain medication used to treat moderate to severe pain. See Oxycodone, Drugs.com, https://www.drugs.com/oxycodone.html (last updated Oct. 4, 2017).

[10] Edema is the medical term for swelling. See What is Edema?, WebMD, https://www.webmd.com/heart-disease/heart-failure/edema-overview (last visited Jan. 9, 2018).

finger.  (Id.)  Dr. Billings noted that it was "very difficult for [her] to ascertain edema in the right upper extremity but [Plaintiff's] right upper extremity [did] appear to be a little bit larger than the left upper extremity."  (AR 247.)  On August 15, 2012, she performed an "[e]xcisional biopsy of [Plaintiff's] right hand mass."  (AR 250-51.)

Plaintiff had a gout flare-up on May 7, 2012, but by May 21 it was stable.  (AR 275-76.)  In July 2012, Dr. Harvey continued to treat his gout flare-ups with antiinflammatory medication and referred him to another physician for "long term pain [management]" for his gunshot wounds.  (AR 273.)  At an August 8, 2012 physical, Plaintiff showed no "edema" or "tender[ness]." (AR 272.)  He next saw Dr. Harvey on November 14, 2012, for pain in his right hand, feet, and back from a gout flare-up.  (AR 271.)  He described his pain as being a "7" out of 10, but though Dr. Harvey "advised [a] Solu[-]medrol"[11] injection, he "refused" and apparently continued taking colchicine.  (Id.)  Dr. Harvey recommended he return in two weeks, but Plaintiff didn't see him again for almost a year; at his next appointment, in September 2013, he was stable with no pain and still taking colchicine (AR 262, 267), but his blood work showed elevated uric-acid levels (AR 266).

Plaintiff began seeing rheumatologist Randall Gilbert on

---

[11] Solu-Medrol reduces symptoms such as swelling and pain by decreasing a patient's immune system's response to various diseases.  See Solu-Medrol Solution, WebMD, https://www.webmd.com/drugs/2/drug-6135/solu-medrol-injection/details (last visited Dec. 20, 2017).  It is usually administered by injection.  Id.

August 12, 2013, for "flare[-up]s involving [his] hands, knees, and feet," complaining specifically of "several months of [left] lateral wrist pain." (AR 365.) Dr. Gilbert noted that Plaintiff's hands had "[g]ood fist closures," his right wrist had a "full [range of motion]," his back had "mild [to] moderate referred pain," and his knees had "full" bilateral range of motion. (Id.) He assessed "wrist lateral tendonitis," gout, and "discogenic" lumbar pain; administered an injection to Plaintiff's left wrist; recommended "maintain[ing] colchicine"; and continued Plaintiff's oxycodone prescription. (Id.) On September 17, 2013, Plaintiff reported that the injection on his left wrist had "provided excellent benefit," and Dr. Gilbert noted that he now had "full [range of motion]" in that wrist. (AR 364.) He further complained of "moderate referred pain" and "mild swelling" in his right wrist and "mild" pain in his back. (Id.) Dr. Gilbert injected his right wrist, continued his colchicine prescription, and recommended decreasing his oxycodone prescription. (Id.)

On October 21, 2013, Plaintiff reported that the right-wrist injection "provided good benefit" until he "developed a recurrence of [right] lateral wrist pain." (AR 363.) He also had "developed a gouty flare[-up]" of his feet, but his "low back pain [was mild and] reasonably controlled." (Id.) Dr. Gilbert treated his right wrist with a "lateral tendon inject[ion]" and continued his prescription for oxycodone. (Id.) On January 17, 2014, Plaintiff complained of gout flare-ups in his left wrist and right ankle and foot, but his lower-back pain was "mild" and "stable on medication." (AR 362.) Dr. Gilbert injected his left

wrist, prescribed Uloric[12] to treat his gout, and continued his

oxycodone prescription. (Id.)

On March 20, 2014,[13] Plaintiff reported that his left wrist

"greatly improved" following the January 17 injection, and he

showed "full" range of motion in that wrist. (AR 491.) He

complained of "[left] foot swelling and associated pain" but had

only "mild forefoot edema [and] minimal tenderness" in that foot,

with "good" range of motion in his right foot. (Id.) He also

complained of "persist[ent]" "moderate" lumbar pain. (Id.) He

had not yet begun taking Uloric, and Dr. Gilbert again prescribed

it for him. (Id.) He also recommended that Plaintiff continue

taking colchicine and oxycodone. (Id.) On June 16, 2014,

---

[12] Uloric lowers uric-acid levels in people with gout. See Uloric, WebMD, https://www.webmd.com/drugs/2/drug-151872/uloric-oral/details (last visited Jan. 9, 2018).

[13] Dr. Gilbert's treatment notes after Plaintiff's January 17, 2014 appointment were apparently not in the record at the time of the ALJ's decision but were submitted to the Appeals Council. (See AR 5, 52-55; compare AR 392 (incomplete Mar. 20, 2014 notes), with AR 491 (complete Mar. 20, 2014 notes).) Social Security Administration regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also § 416.1470(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163; accord Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011); see also Borrelli v. Comm'r of Soc. Sec., 570 F. App'x 651, 652 (9th Cir. 2014) (remand necessary when "reasonable possibility" exists that "the new evidence might change the outcome of the administrative hearing"). Thus, the Court includes these additional 2014 records in its review.

Plaintiff said he had taken Uloric for two months and tolerated it well, but apparently he stopped at some point because Dr. Gilbert wrote in his notes for Plaintiff to "re-start Uloric." (AR 490.) He reported "mild" wrist pain, "moderate" back pain, and hand pain with "mildly weak fist closures." (Id.) Dr. Gilbert continued his prescriptions for oxycodone and colchicine. (Id.)

On August 13, 2014, Plaintiff complained of "markedly increased [left] knee pain with weight-bearing," "mild" left-wrist pain, and "moderate" "lumbar pain with activity." (AR 489.) His right knee had a "full" range of motion. (Id.) Dr. Gilbert injected his left knee and continued his prescriptions for Uloric, colchicine, and oxycodone. (Id.) On October 23, 2014, Plaintiff reported that his left knee was "partially improved following [his August 13] injection." (AR 488.) He had "halted [Uloric] for 1 month." (Id.) He complained of "moderate persistent plantor feet pain with ambulation," "mild" left-knee pain, "mild" hand pain, and "moderate" back pain. (Id.) His hands showed "adequate fist closures." (Id.) Dr. Gilbert recommended increasing Uloric and maintaining colchicine and oxycodone. (Id.) On November 26, 2014, Dr. Gilbert opined that Plaintiff's "moderately severe active tophaceous[14] gouty arthritis" had "markedly impaired the function of his hands for activities of daily living and fine motor movements of his

---

[14] Tophaceous gout is a form of chronic gout in which nodular masses of uric-acid crystals are deposited in soft-tissue areas of the body. Medical Definition of Gout, tophaceous, MedicineNet.com, https://www.medicinenet.com/script/main/art.asp?articlekey=3625 (last updated May 13, 2016).

fingers." (AR 441.)[15]

Consulting internist Steven Gerber evaluated Plaintiff on
February 7, 2014. (AR 366-70.) Plaintiff's chief complaint was
"constant, sharp lower back pain without radiation" that was
"exacerbated by prolonged standing and walking" but "relieved
with medications." (AR 366.) He stated that "he [was] able to
walk one-half block and attend church services for 35 minutes
without difficulty." (AR 367.) Dr. Gerber noted that he was
able to "get[] on and off the examination table without
difficulty." (Id.) Plaintiff's lumbar spine showed "no
tenderness to palpation in the midline," his "[s]traight leg
raising test [was] positive bilaterally at 60 degrees," and his
range of motion showed "[l]ateral flexion . . . 20/25 degrees,
extension 20/25 degrees, and forward flexion 50/90 degrees." (AR
368.) His extremities generally showed "no . . . edema." (AR
369.) "There [was] no evidence of tenderness to palpation of the
wrists," and his wrist "[r]ange of motion [was] intact" and
"within normal limits." (Id.) His hands showed "no evidence of
joint deformities" and could be "fully extended," and he was
"able to make a fist and oppose the thumbs." (Id.) His ankles
showed "no joint deformities" or "swelling," and their "[r]ange

_____

[15] Additional medical records from Dr. Gilbert dated March
5, 2015, through March 17, 2016, were "looked at" by the Appeals
Council (see AR 20-27) but not considered because his case was
decided on December 9, 2014, and the records were "about a later
time" (AR 2). Medical examinations that take place after the
ALJ's decision may still relate to a claimant's conditions
"during the relevant time period." Handy v. Colvin, No. CV
14-02149-SH, 2014 WL 4895678, at *3 (C.D. Cal. Sept. 30, 2014).
Plaintiff does not contend that the Appeals Council erred in
rejecting the medical records from 2015 and 2016, however, so the
Court does not address them.

of motion [was] intact" and "within normal limits." (Id.)
Plaintiff "[did] not require the use of an assistive device to
ambulate throughout the clinic area." (AR 370.) Based on his
examination, Dr. Gerber assessed Plaintiff as being able to "lift
or carry 20 pounds occasionally and 10 pounds frequently," "stand
or walk for 6 hours in an 8-hour day," "sit for 6 hours in an 8-
hour day," and "occasionally climb, crouch, stoop, bend, kneel,
and crawl." (Id.)

    Plaintiff filled out a Pain Questionnaire on December 24,
2013. (AR 199-201.) He reported feeling "constant [and]
throbbing" pain "daily" in his joints, lower back, feet, knees,
legs, and hands. (AR 199.) Rest and medicine "help[ed]" but
"[didn't] stop" his pain, and the medicine caused "fatigue,
weakness, dizziness[, and] diarrhea." (AR 199-200.) He said no
surgery was scheduled to attempt to relieve his pain. (AR 200.)
His family helped him "constant[ly]" with activities such as
bathing, getting up, buying groceries, completing errands, and
getting dressed. (AR 201.) He also filled out an undated
Exertional Daily Activities Questionnaire. (AR 202-04.) He
stated that he "[couldn't] do . . . much of anything without
someone helping [him because his] joints [were] constantly in
pain." (AR 202.) He couldn't "lift or carry anything [or] stand
for a long period of time." (Id.) He required rest periods or
naps twice a day and "[had] to use [a] cane on a daily [basis]."
(AR 204.)

    At his November 19, 2014 hearing, Plaintiff stated that
despite treatment for his gout, his "hands . . . constantly hurt"
and felt "weak." (AR 65.) He testified that he got flare-ups in

16

"particular part[s] of [his] body" "[e]very other week" and that
his "gout [had] gotten a lot worse." (AR 65-66, 68.) He said he
could "move [his] fingers," but if he "pick[ed] things up with
[his] hands" "it [would] start hurting." (AR 69.) He testified
that he received injections "once or twice a month," and his last
injection had been on his left wrist two months before the
hearing. (AR 70.) Finally, he stated that he did not have any
side effects from the colchicine and oxycodone he took aside from
drowsiness. (AR 73.)

### 3. <u>Analysis</u>

The ALJ was required to provide "clear and convincing"
reasons for rejecting Plaintiff's testimony. <u>See</u> <u>Brown-Hunter</u>,
806 F.3d at 493; <u>Treichler</u>, 775 F.3d at 1102. As argued by
Plaintiff (<u>see</u> J. Stip. at 4-13, 23-26) and discussed below, he
failed to do so.

First, the ALJ gave "limited weight to [Plaintiff's]
testimony and statements" because his "treatment [had] been
conservative at best." (AR 48.) He wrote that "no surgery or
other intense treatment modalities [had] been necessary" and that
Plaintiff "[had] not been prescribed narcotic pain medication."
(<u>Id.</u>) But none of those assertions is accurate. The record
shows that Plaintiff had two surgeries, at least one of which was
for "treatment." On December 6, 2011, he had a rod inserted in
his femur following a gunshot wound (AR 303), and on August 15,
2012, he had a biopsy and removal of a 10-year-old mass on his
right hand (<u>see</u> AR 246, 250-51). Plaintiff testified that he had
"a rod from [his] hip to [his] knee" because a "bullet . . .
shattered [his] whole femur bone" (<u>see</u> AR 67), and the ALJ

17

himself noted that the surgery involved debridement[16] and anterior washout[17] (AR 47), which is "treatment." See, e.g., Sanchez v. Berryhill, No. CV 16-8043-KK, 2017 WL 3530342, at *6 (C.D. Cal. Aug. 16, 2017) (describing debridement as "treatment").

Further, Plaintiff was prescribed Vicodin after his femur surgery in December 2011 (AR 303-04), and Drs. Harvey and Gilbert prescribed oxycodone to treat Plaintiff's pain beginning in April 2012 and continuing to the time of the Appeals Council's review. (AR 276-77, 362-65, 488-91.) Both Vicodin and oxycodone are narcotic pain medications.

Nor was Plaintiff's treatment "conservative." Dr. Gilbert treated Plaintiff's gout and lower-back pain with colchicine, Uloric, and multiple joint injections. (See AR 362-65, 488-91.) The use of narcotics to control pain in conjunction with a series of regular injections does not constitute "conservative" treatment. See, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment with narcotic pain medication, occipital nerve blocks, trigger-point injections, and cervical-fusion surgery not conservative); Samaniego v. Astrue, No. EDCV 11-865 JC, 2012 WL 254030, at *4 (C.D. Cal. Jan. 27, 2012) (treatment not conservative when claimant was treated "on a

---

[16] Debridement is the excision of devitalized tissue and foreign matter from a wound. Stedman's Medical Dictionary 460 (27th ed. 2000).

[17] "Washout" means to disperse or empty by flooding with water or another solvent. See Washout, Medical Dictionary, https://medical-dictionary.thefreedictionary.com/washout (last visited Jan. 9, 2018).

continuing basis" with steroid and anesthetic "trigger point injections," occasional epidural injections, and narcotic medication and doctor recommended surgery); Christie v. Astrue, No. CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with "narcotic pain medication, steroid injections, trigger point injections, epidural shots, and cervical traction" not conservative); Ruiz v. Berryhill, No. CV 16-2580-SP, 2017 WL 4570811, at *5-6 (C.D. Cal. Oct. 11, 2017) (treatment by "narcotic medication, facet joint injections, and epidural steroid injections" not conservative).

The ALJ also found that Plaintiff "did not report any adverse side-effects from any of his prescribed medications." (AR 48.) That too is incorrect. Although Plaintiff testified at the hearing that he had no side effects from the medications he was then taking other than "drowsiness" (AR 73), he wrote in his Pain Questionnaire that the medicines caused "fatigue, weakness, dizziness[, and] diarrhea" (AR 200). Further, in the past he had experienced significant side effects, such as "hepatic and renal failure," when he took allopurinol[18] to treat his gout. (See AR 491.) Although the ALJ is "allowed to consider . . . the lack of side effects from prescribed medications" in making a credibility determination, see Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam), here the ALJ misconstrued the record.

Moreover, the relevant analysis is whether Plaintiff's

_____

[18] Allopurinol treats gout by reducing the amount of uric acid made by the body. See Allopurinol, WebMD, https://www.webmd.com/drugs/2/drug-8610/allopurinol-oral/details (last visited Jan. 9, 2018).

severe impairments caused disabling pain rather than whether his
medication caused side effects. Plaintiff alleged "daily" pain
and received multiple injections to treat it. (See AR 70, 199.)
He said he experienced "constant," "throbbing" pain, heat, and
swelling in his joints, lower back, feet, knees, legs, and hands.
(AR 199.) The ALJ found that Plaintiff's "characterization of
pain [was] consistent with the medical records" but then held
that "his pain [did] not preclude work activity" without
providing a clear and convincing reason why. (See AR 48.) He
stated that Plaintiff "was able to fully participate in the
hearing without being distracted by pain" (id.), but his being
able to sit through a 30-minute hearing does not show that he
could work eight hours a day for five days a week on a sustained
basis. See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir.
1985) (per curiam) ("Denial of benefits cannot be based on the
ALJ's observation of [Plaintiff], when [Plaintiff]'s statements
to the contrary . . . are supported by objective evidence.").

    For all these reasons, the ALJ failed to provide a clear and
convincing reason for his adverse credibility determination.
Plaintiff is therefore entitled to remand on this ground.[19]

---

[19] The ALJ also noted that "there were no opinions of record
that found that the [Plaintiff] was disabled." (AR 48.) As
Plaintiff argues (see J. Stip. at 26-27), Dr. Gilbert's November
26, 2014 statement may have been before the ALJ (compare AR 440-
41 (showing that statement was faxed on Dec. 5, 2014, four days
before ALJ's decision), with AR 6 (showing Appeals Council making
statement part of record on June 6, 2016)), and yet the ALJ did
not discuss it. Though Dr. Gilbert does not directly opine in
the statement that Plaintiff was disabled, he does find
limitations significantly more serious than those assessed by the
ALJ. (See AR 441.) On remand, the ALJ should expressly consider
Dr. Gilbert's treating-physician opinion.

B.   <u>Remand for Further Proceedings Is Appropriate</u>

Plaintiff "seeks an order from the Court reversing the final decision and awarding benefits." (J. Stip. at 33.)  When, as here, an ALJ errs, the Court generally has discretion to remand for further proceedings.  <u>See</u> <u>Leon v. Berryhill</u>, 874 F.3d 1130, 1132 (9th Cir. 2017); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended); <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003) ("credit as true" doctrine is not mandatory).  When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit as true" rule to direct an immediate award of benefits.  <u>See Harman</u>, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019-20 (9th Cir. 2014).

When the ALJ's findings are so "insufficient" that the Court cannot determine whether the rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule.  <u>Connett</u>, 340 F.3d at 876; <u>see also</u> <u>Garrison</u>, 759 F.3d at 1020 (noting that <u>Connett</u> established that credit-as-true rule may not be dispositive in all cases).  This flexibility should be exercised "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." <u>Garrison</u>, 759 F.3d at 1021.  Such doubt exists here, given that each injection significantly relieved Plaintiff's joint pain and his lower-back pain was reasonably controlled by medication.

Accordingly, further administrative proceedings would serve

the useful purpose of allowing the ALJ to reassess Plaintiff's
statements' credibility, and if he again finds them "not fully
credible" (AR 48), provide a clear and convincing reason for that
finding. He may also assess Dr. Gilbert's November 26, 2014
opinion and reevaluate Plaintiff's RFC in light of that evidence.
Thus, remand is appropriate. See <u>Garrison</u>, 759 F.3d at 1020
n.26.

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42
U.S.C. § 405(g),[20] IT IS ORDERED that judgment be entered
REVERSING the Commissioner's decision as to Plaintiff's SSI
application only, GRANTING Plaintiff's request for remand, and
REMANDING this action for further proceedings consistent with
this memorandum decision.


DATED: January 10, 2018        _____
                               JEAN ROSENBLUTH
                               U.S. Magistrate Judge

---

[20] That sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record,
a judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."